**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **ALVIN WILLIAMS (#480922)** | **:** | **CIVIL ACTION** |
| | **:** | **NO. 21-636-JWD-SDJ** |
| **VERSUS** | | |
| | **:** | **JUDGE JOHN W. deGRAVELLES** |
| **DAVID VOORHIES, ET AL** | **:** | **MAGISTRATE JUDGE** |
| | | **SCOTT D. JOHNSON** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**</u>

**MAY IT PLEASE THE COURT:**

Defendants, David Voorhies and Omar Walker, hereby submit this memorandum in support of their Motion for Summary Judgment. For reasons more fully explained below, this Honorable Court should grant Defendants' Motion for Summary Judgment and dismiss Plaintiff's claims against them.

## I.     <u>STATEMENT OF THE CASE</u>

At all times pertinent to this case, Plaintiff was confined to the custody of the Department of Public Safety and Corrections and housed at Louisiana State Penitentiary ("LSP") in Angola, Louisiana. On or about November 2, 2021, Plaintiff filed a Complaint pursuant to 42 U.S.C. §1983 against Defendants, David Voorhies and Omar Walker.[1]  Pursuant to Court Order, Plaintiff filed an amended complaint on November 9, 2021.[2]

Defendants filed a Motion to Dismiss on June 1, 2023.[3] The Motion to Dismiss was granted on December 6, 2023.[4] This dismissed Plaintiff claims against defendants in their official capacity

---

[1] R. Doc. 1.
[2] R. Doc. 4.
[3] R. Doc. 15.
[4] R. Doc. 19.

1

for monetary damages.[5] The only claims remaining following this Motion to Dismiss are Plaintiff's

claims for injunctive relief and monetary damages against Defendants in their individual capacities

for excessive force and failure to intervene.[6] Defendants filed a Motion for Leave to Amend the

Scheduling Order in January 9, 2024.[7] This Motion was granted on February 9, 2024 giving a

discovery deadline of March 29, 2024 and a cross-motions for summary judgment deadline of

April 29, 2024.[8] As such, Defendants now file this Motion for Summary Judgment.

## II.    STATEMENT OF FACTS

The incident Plaintiff alleges occurred with Defendants Voorhies and Walker happened on

April 28, 2021.[9] On April 28, 2021, Defendant Voorhies was conducting a routine round on CBD

Upper Left Tier when he observed Plaintiff with his cell door tied shut with a piece of plastic

material that encased the mattresses.[10] Defendant Voorhies ordered Plaintiff to untie his cell door,

and Plaintiff complied.[11] Defendant Voorhies also observed Plaintiff with a piece of the plastic

material tied around his abdomen.[12] Defendant Voorhies gave Plaintiff orders to remove the

material and submit to a strip search, but Plaintiff refused.[13] Defendant Voorhies gave Plaintiff

more direct verbal orders to remove the material and submit to a strip search, but Plaintiff

continued to refuse those orders.[14] Defendant Voorhies administered the minimum amount of

chemical agent into Plaintiff's cell in order to gain his compliance, after which Plaintiff complied

with Defendant Voorhies' orders.[15] Plaintiff was strip searched, restrained, removed from his cell,

---

[5] R. Doc. 19.
[6] R. Doc. 19.
[7] R. Doc. 29.
[8] R. Doc. 30.
[9] R. Doc. 1 & 4.
[10] Exhibit A, p. 1, ¶ 3-4.
[11] Exhibit A, p. 1, ¶ 5-6.
[12] Exhibit A, p. 1, ¶ 7.
[13] Exhibit A, p. 1, ¶ 8-9.
[14] Exhibit A, p. 1, ¶ 10.
[15] Exhibit A, p. 2, ¶ 11 & 13.

and escorted to the shower.[16] Plaintiff was offered a shower and given a clean jumpsuit.[17] Officers do not have any control over or access to change the showers' water temperatures.[18] Medical was notified about the use of chemical agent and Plaintiff was later seen and evaluated.[19] At no time did Defendant Voorhies use any excessive force on Plaintiff.[20]

Defendant Walker was not present on the CBD Upper Left Tier during the incident Plaintiff alleges occurred.[21] Defendant Walker did not use any chemical agent, or any type of force, on Plaintiff.[22]

Plaintiff's medical records show that he was involved in numerous other incidents that could have led to his alleged wrist injury, and Plaintiff's prison record corroborates these incidents.[23] Plaintiff made no complaints regarding his alleged wrist injury on April 28, 2021 when he was seen by medical.[24]

Further, Defendants sent Plaintiff requests for admissions on December 27, 2023, but Plaintiff never responded to these requests or admissions.[25] Pursuant to the Federal Rules of Civil Procedure, requests for admissions not responded or objected to are deemed admitted.[26] One admission deemed admitted requested Plaintiff to admit that he refused to remove the plastic from around his waist on April 28, 2021.[27] Another admission deemed admitted requested Plaintiff to admit that he was in a fight on May 3, 2021 where he injured his right hand.[28]

---

[16] Exhibit A, p. 2, ¶ 14-15.
[17] Exhibit A, p. 2, ¶ 16.
[18] Exhibit A, p. 2, ¶ 18; Exhibit B, p. 2, ¶ 8.
[19] Exhibit A, p. 2, ¶ 17, Exhibit C, p. 7.
[20] Exhibit A, p. 2, ¶ 19.
[21] Exhibit B, p. 1, ¶ 3.
[22] Exhibit B, p. 2, ¶ 6.
[23] Exhibit C, p. 2-6 & 8-11; Exhibit D, p. 2-4, 6-10.
[24] Exhibit C, p. 7.
[25] See R. Doc. 24.
[26] FRCP 36(a)(3).
[27] See R. Doc. 24, RFA No. 1.
[28] See R. Doc. 24, RFA No. 2.

### III.    LAW ON SUMMARY JUDGMENT

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact and the moving party is entitled to judgment as a matter of law.[29] Supporting affidavits must set forth facts, which would be admissible in evidence, and opposing responses must set forth specific facts showing that there is a genuine issue for trial.[30] If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can show a reasonably jury that it is entitled to a verdict in its favor.[31]

This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.[32]  Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case and on which that party will bear the burden of proof at trial.[33]

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim."[34] Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and do not defeat a properly supported motion for summary judgment.[35] Summary judgment is appropriate in any case where the evidence is so weak or tenuous on

---

[29] FED. R. CIV. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986).
[30] *Anderson,* 477 U.S. at 248.
[31] *Id.*
[32] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[33] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[34] *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).
[35] *Id.*; *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996).

essential facts that the evidence could not support a judgment in the favor of the non-moving party.[36]

Defendants in this matter satisfy their initial responsibility in moving for summary judgment by informing the Court of the basis for their motion through the *Statement of Uncontested Facts* and the attached exhibits. The attached exhibits are as follows:

**Exhibit A:** Declaration of David Voorhies;[37]

**Exhibit B:** Declaration of Omar Walker;[38]

**Exhibit C:** Excerpts from Certified Copy of Plaintiff's Medical Records;

**Exhibit D:** Excerpts from Certified Copy of Plaintiff's Master Prison Record;

**Exhibit E:** Certified Copy of the Unusual Occurrence Report dated 4/28/21; and

**Exhibit F:** Certified Copy of Louisiana State Penitentiary Directive No. 09.002 – Use of Force Policy.

### a. <u>Defendants Voorhies and Walker are Entitled to Qualified Immunity</u>

Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction and liability when they perform their duties reasonably.[39] The qualified immunity defense is a familiar one and operates to protect a public official who is performing a discretionary task.[40] Government officials, performing discretionary functions, "generally are

---

[36] *Little*, 37 F.3d at 1076.

[37] The Declaration of David Voorhies attached is currently unsigned but will be substituted with a signed copy as soon as available.

[38] The Declaration of Omar Walker attached is currently unsigned but will be substituted with a signed copy as soon as available.

[39] *Pearson v. Callahan*, 129 S.Ct. 808, 815-816, citing *Harlow v. Fitzgerald*, 102 S.Ct. 2727, 2738 (1982).

[40] *Hale v. Townley*, 45 F.3d 914 (5th Cir. 1995).

shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[41]

Qualified immunity allows officials the freedom to exercise fair judgment, protecting "all but the plainly incompetent or those who knowingly violate the law."[42] Officials' actions or decisions that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity."[43]

The U.S. Supreme Court has repeatedly stressed that the immunity issue must be resolved at the earliest possible stage of the litigation since it entails not merely a defense to liability, but is instead immunity from suit and an entitlement not to stand trial or face the other burdens of litigation.[44] The courts have traditionally used the two-step method in determining whether a defendant is entitled to qualified immunity. The sequencing of the analysis has been left to the discretion of the District Court Judges to determine which of the two prongs should be analyzed first.[45]

The first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional right.[46] This is a "purely legal question" to be determined by the Court.[47] The court uses currently applicable constitutional standards to make this assessment.[48] The plaintiff bears the burden of pleading such a violation of clearly established law.[49]

---

[41] *Harlow v. Fitzgerald*, 102 S.Ct. 2727, 2738 (1982).
[42] *Malley v. Briggs*, 106 S.Ct. 1092, 1096 (1986).
[43] *Alton v. Texas A&M University*, 168 F.3d 196, 201 (5th Cir. 1999).
[44] *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).
[45] *Pearson v. Callahan*, 129 S.Ct. 808 at 818, 172 L.Ed.2d 565 (2009).
[46] *Id.*
[47] *Siegert v. Gilley*, 111 S.Ct. 1789, 1793 (1991).
[48] *Saucier*, 121 S.Ct. at 2156.
[49] *Mitchell v. Forsyth*, 105 S.Ct. 2806, 2815 (1985).

The second step the district court must determine is whether the right allegedly violated was clearly established at the time of the infraction.[50] This inquiry must be undertaken in light of the specific factual context of the case, not as a broad, general proposition. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted.[51]

The court must determine whether an alleged right was established with sufficient particularity that a reasonable official could anticipate his actions would violate that right.[52]  It is not enough that the law be established as a general proposition (such as that the Fourth Amendment prohibits "unreasonable" searches and seizures or that the Eighth Amendment prohibits "excessive" force).  Rather, the right that the official is alleged to have violated must have been "clearly established" in a more particularized and more relevant sense. The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right at the time.[53]  As the Supreme Court held:

> The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful *in the situation he confronted*.[54]

If the law did not put the officer on notice that his conduct in the situation he confronted would be clearly unlawful, he is entitled to qualified immunity.[55] Officials are not expected to determine the manner in which the law's gray areas might be clarified or defined.[56] Further, the

---

[50] *Id.*
[51] *Id.*
[52] *Anderson* v. Creighton, 107 S.Ct. 3034, 3039 (1987).
[53] *Saucier*, 121 S.Ct. at 2156.
[54] *Saucier*, 121 S.Ct. at 2156 (*emphasis added*).
[55] *Saucier*, 121 S.Ct. at 2156-57.
[56] *Davis v. Scherer*, 104 S.Ct. 3012, 3019-20 (1984).

7

Supreme Court has held that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."[57]  Defendants sued in their individual capacities should be granted qualified immunity unless their actions "were patently incompetent or intentionally flouted the law."[58]

> i.  *Defendant Voorhies is Entitled to Qualified Immunity for the Excessive Force Claim*

EXCESSIVE FORCE

Force is excessive and in violation of the Eighth Amendment of the United States Constitution when applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline. The Eighth Amendment's prohibition against cruel and unusual punishment, however, necessarily excludes from constitutional recognition *de minimis* uses of physical force, if such force is not a sort "repugnant to the conscience of mankind." "[W]henever a corrections officer stands accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is… whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. In determining whether an officer used excessive courts often look to five factors.

It must be understood that a constitutional violation does not occur every time an officer touches someone.[59] In just about every conceivable situation, some amount of force or contact

---

[57] *Malley v. Briggs*, 106 S.Ct. 1092, 1096 (1986).

[58] *Brady v. Fort Bend County,* 58 F.3d 173, 173 (5th Cir. 1995); *see also Shipp v. McMahon,* 234 F.3d 907, 915 (5th Cir. 2000) (noting that "courts have narrowly adjudicated issues of qualified immunity largely to the benefit of government officials," and qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

[59] *Ikerd v. Blair*, 101 F.3d 430, 434 (C.A. 5 (La.), 1996) (quoting *Hudson*, 503 U.S. at 9).

would be too nominal to constitute a constitutional violation.[60] When the force used is insufficient to satisfy the legal standard necessary for recovery, the amount of force is de minimis for constitutional purposes.[61] The amount of force that is constitutionally permissible, therefore, must be judged by the context in which that force is deployed.[62] The factors that are to be considered in determining whether an alleged use of force has been excessive are as follows: (1) the extent of injury sustained, if any, (2) the need for the application of force, (3) the relationship between the need for force and the amount of force utilized, (4) the threat reasonably perceived by prison officials, and (5) any efforts made to temper the severity of a forceful response.[63]  The Court must give an adequate evaluation of all of the factors.[64]

### Prong One

For the first prong of qualified immunity, it must be determined if Plaintiff can prove that a constitutional violation occurred. This is determined by looking at and weighing the *Hudson* factors.[65] For the reasons that follow, the Hudson factors weigh in favor of Defendant Voorhies.

The first factor, extent of the injury sustained, weighs in favor of Defendant Voorhies. For the use of chemical agent, Plaintiff only suffered minimal injuries. The only time Plaintiff was seen for any issues from the chemical agent use was on the day of the incident, April 28, 2021.[66] There are no other medical records that show that Plaintiff suffered from the effects of the chemical agent beyond that day. As such, his injuries from the chemical agent use were minimal.

Plaintiff also alleges that he sustained wrist injuries as a result of the incident that occurred on April 28, 2021 while he was being transported by Defendant Voorhies from his cell to the

---

[60] *Ikerd,* 101 F.3d at 434.
[61] *Id.*
[62] *Id.*
[63] *Hudson v. McMillian, et al.*, 503 U.S. 1, 7 (U.S. 1992).
[64] *Martin v. Seal*, 510 F. App'x 309, 316–17 (5th Cir. 2013).
[65] *Hudson*, 503 U.S. at 7.
[66] Exhibit C, p. 7.

shower.[67] When looking at Plaintiff's medical records, it does not appear that Plaintiff complained of any wrist injuries when he was seen by medical on April 28, 2021.[68] There are other medical records from different days where Plaintiff claims he obtained wrist injuries from other incidents that occurred within a few days before or after the April 28 incident.[69] Plaintiff's prison record also corroborates that he was involved in other fights on the days preceding and following the incident subject to this suit.[70] Because of this, it cannot be definitively said that any of Plaintiff's wrist injuries were caused by any of the actions he alleges were committed by Defendant Voorhies. Further, Plaintiff did not respond to Defendants' Requests for Admissions, one of which asked Plaintiff to admit that he was in a fight on May 3, 2021 where he injured his right hand.[71] Pursuant to the Federal Rules of Civil Procedure, requests for admissions that are not responded to are deemed admitted.[72] Because Plaintiff did not respond to Defendants' request for admissions, this means that Plaintiff has admitted that the fight he was in on May 3, 2021 is where he injured his right hand, not the incident he alleges occurred with Defendant Voorhies. As such, Defendant Voorhies maintains that Plaintiff's injuries were not caused by him, so this factor weighs in Defendant's favor.

The second factor, the need for the application of force, also weighs in Defendant Voorhies' favor. First, Defendant Voorhies does admit to using chemical agent on Plaintiff due to his non-compliance with verbal orders regarding the removal of plastic from Plaintiff's mattress that was tied on the cell door and Plaintiff's abdomen.[73] This use of force was in accordance with Louisiana

---

[67] R. Doc. 1 & 4.
[68] Exhibit C, p. 7.
[69] Exhibit C, p. 2-6 & 8-11.
[70] Exhibit D, p. 2-4, 6-10
[71] See R. Doc. 24.
[72] FRCP 36(a)(3).
[73] Exhibit A, p. 2, ¶ 11.

State Penitentiary's Use of Force Policy.[74] The Use of Force Policy sets forth the situations where corrections officers are allowed to use force and specifically when chemical agent use is allowed.[75] An officer can use chemical agent to prevent an act that could result in death or serious bodily injury to one's self or another person, to gain offender compliance when other less lethal force options within the force continuum have failed, are clearly inappropriate, and/or ineffective, and to enforce institutional rules.[76] Further, prison guards have a duty to maintain order in the prison. Use of chemical agents is considered a used of force.[77] The force continuum shows the order in which different types of force should be used.[78] This continuum essentially shows that officers should start using the least amount of force, and then escalate in intensity when the lowest levels of force are not working to gain compliance of the offender.[79]

In relation to the alleged use of force Plaintiff claims Defendant Voorhies used while transporting Plaintiff to the shower, Defendant Voorhies maintains that he did not use any excessive force during that transport.[80] Plaintiff's lack of injury is evidence that Defendant Voorhies did not use excessive force on Plaintiff, and the application of force was sufficient to transport Plaintiff to the shower. As previously argued, Plaintiff's wrist was not injured by Defendant Voorhies on this day, so the second factor weighs in favor of Defendant Voorhies.

The third factor, the relationship between the need for force and the amount of force utilized, weighs in Defendant Voorhies' favor. For the use of chemical agent, Plaintiff was sprayed with chemical agent for not complying with Defendant Voorhies' orders to remove the plastic

---

[74] Exhibit F.
[75] Exhibit F.
[76] Exhibit F, p. 5, Section (A)(3)(b)(3) and (6).
[77] Exhibit F, p. 9, Section (C)(2).
[78] Exhibit F, p. 3, Definitions.
[79] Exhibit F, p. 3, Definitions.
[80] Exhibit A, p. 2, ¶ 19.

material from his abdomen and submit to a strip search.[81] Defendant Voorhies gave Plaintiff direct verbal orders to remove the plastic material from his abdomen before deciding to administer the chemical agent.[82] Defendant Voorhies only used the minimum amount of chemical agent, which was recorded as being forty-six (46) grams.[83]

In relation to the alleged use of force Plaintiff claims Defendant Voorhies used while transporting Plaintiff to the shower, Defendant Voorhies maintains that he did not use any excessive force during that transport.[84] Because Plaintiff's wrist was not injured by Defendant Voorhies during the incident on April 28, 2021, the third factor weighs in favor of Defendant Voorhies.

The fourth factor, threat reasonably perceived by prison officials, weighs in Defendant Voorhies' favor. Courts have recognized that an inmate's noncompliance with direct verbal orders, is a relevant threat to be considered due to the disturbance this may cause in an institutional setting.[85] As previously outlined, Plaintiff was not complying with Defendant Voorhies' orders to remove the plastic from his abdomen and submit to a strip search.[86] Because of Plaintiff's noncompliance with the verbal orders, this created a relevant threat that could be considered a disturbance within the prison. As such, Defendant Voorhies reasonable perceived a threat by Plaintiff's noncompliance.

---

[81] Exhibit A, p. 1, ¶ 7-10 & p. 2, ¶ 11.
[82] Exhibit A, p. 1, ¶ 7-10 & p. 2, ¶ 11.
[83] Exhibit A, p. 2, ¶ 12.
[84] Exhibit A, p. 2, ¶ 19.
[85] *See Jackson v. Cleveland*, No. 20-2247, 2021 WL 1269587, at *8 (E.D. La. March 8, 2021) (though disobedience may not pose an immediate physical threat, "if ignored without consequence, [it] can obviously embolden other prisoners to misbehave, thereby disrupting prison order and security."). *See also Martin v. Seal*, No. 11-726, 2014 WL 2890125, at *6 (E.D. La. June 25, 2014).
[86] Exhibit A, p. 1, ¶ 7-10.

Defendant Voorhies still maintains that he did not use any excessive force while transporting Plaintiff to the shower following being sprayed with chemical agent.[87] Again, Plaintiff's wrist injury was not caused by the incident with Defendant Voorhies, so the fourth factor weighs in favor of Defendant Voorhies.

The fifth factor, efforts made to temper the severity of a forceful response, also weighs in Defendant Voorhies' favor. Defendant Voorhies did not first jump to using chemical agent. He began by giving Plaintiff direct verbal orders to remove the plastic from around his abdomen and submit to a strip search.[88] It was only after Plaintiff's noncompliance with those orders that Defendant Voorhies used the chemical agent.[89]

As already argued, Defendant Voorhies did not use any excessive force on Plaintiff while transporting him to the shower.[90] The injuries to Plaintiff's wrist did not occur due to the alleged incident with Defendant Voorhies on April 28, 2021, so the fifth factor weighs in Defendant Voorhies' favor.

In sum, all five of the *Hudson* factors weigh in Defendant Voorhies' favor for both the use of chemical agent and the transport of Plaintiff from his cell to the shower. As a result, it should be determined that any force Defendant Voorhies is deem to have used was not unconstitutional.

Lastly, Plaintiff makes a claim that Defendant Voorhies tried to sabotage the shower by making the temperature extremely hot.[91] Despite this claim, officers do not have any control over the water temperatures in the showers.[92] While offenders are in the showers, officers do not turn on the water, alter the water temperature, or have any access to the water in the shower.[93] As such,

---

[87] Exhibit A, p. 2, ¶ 19.
[88] Exhibit A, p. 1, ¶ 7-10.
[89] Exhibit A, p. 1, ¶ 7-10 & p. 2, ¶ 11.
[90] Exhibit A, p. 2, ¶ 19.
[91] R. Doc. 1, p. 4.
[92] Exhibit A, p. 2, ¶ 18.
[93] Exhibit A, p. 2, ¶ 18.

Defendant Voorhies could not and did not have the ability to "sabotage" the shower temperature before Plaintiff showered to remove the chemical agent.

*Prong Two*

For the second prong of qualified immunity, it must be determined if Defendant's actions were objectively unreasonable in light of clearly established law. "A government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'"[94] There does not need to be a case that is directly on point in order for the law to be clearly established, but "there must be adequate authority to at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful."[95]

The United States Fifth Circuit case law has shown that it is not objectively unreasonable for an officer to use chemical agent on an offender in order to "maintain or restore discipline or to compel compliance with an order."[96] Because Defendant Voorhies sprayed Plaintiff with chemical agent following the refusal of verbal orders, Defendant Voorhies did not act objectively unreasonable in light of clearly established law.

Further, there is no clearly established law that shows that a constitutional violation occurred when no excessive force was used. Plaintiff cannot overcome the Defendant's defense in this regard. As a result, Defendant Voorhies' lack of use of excessive force on Plaintiff during the transport from his cell to the shower where his wrists were allegedly injured was not objectively unreasonable in light of clearly established law.

---

[94] *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011), citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).
[95] *Vincent v. City of Sulfer*, 805 F.3d 543, 547 (5th Cir. 2015).
[96] *Amos v. Jefferson*, 861 Fed.Appx. 596, 604 (5th Cir. 2021).

14

> ii. *Defendant Walker is Entitled to Qualified Immunity for the Claim of*
>
> *Excessive Force*
>
> *Prong One*

Defendant Walker was not present on the tier for the incident that allegedly occurred with Plaintiff on April 28, 2021.[97] Because Defendant Walker was not present, he could not have used chemical agent on Plaintiff.[98] As shown above, despite Plaintiff's claims that Defendant Walker sprayed him with chemical agent, this is not true. Defendant Voorhies admits that he used chemical agent on Plaintiff.[99] Defendant Voorhies admitted in his unusual occurrence report that he used chemical agent on Plaintiff, [100]and the chemical agent logbook shows that Defendant Voorhies was the officer who used chemical agent on Plaintiff.[101] Further, Plaintiff does not allege any injuries that he suffered as a result of being sprayed with chemical agent. His medical records also do not show any complaints for any injuries that resulted from the use of chemical agent other than the one record from the day he was seen by medical for being sprayed.[102] Overall, the Hudson factors weigh in Defendant Walker's favor because excessive force cannot be used by an officer who did not use force and who was not present on tier during an incident.

Plaintiff also makes a claim that Defendant Walker tried to sabotage the shower by making the temperature extremely hot.[103] As already established, Defendant Walker was not present on the tier during the incident, so he could not have done anything to sabotage the water temperature in the shower. Despite this, even if Defendant Walker had been present, officers do not have any

---

[97] Exhibit B, p. 1, ¶ 3.
[98] Exhibit B, p. 2, ¶ 6.
[99] Exhibit A, p. 2, ¶ 11; Exhibit E: p. 3.
[100] Exhibit E.
[101] Exhibit F.
[102] Exhibit C, p. 7.
[103] R. Doc. 1, p. 4.

15

control over the water temperatures in the showers.[104] While offenders are in the showers, officers do not turn on the water, alter the water temperature, or have any access to the water in the shower.[105] As such, Defendant Walker could not and did not have the ability to "sabotage" the shower temperature before Plaintiff showered to remove the chemical agent.

*Prong Two*

There is no clearly established law that shows than an officer acted objectively unreasonable in a use of excessive force when he was not present during an incident and did not use any force. Defendant Walker did not exhibit any actions that were objectively unreasonable in light of clearly established law. As such, Defendant Walker is entitled to Qualified Immunity for the claim of excessive force and this claim against him should be dismissed.

### iii. *Defendant Voorhies is Entitled to Qualified Immunity for the Claim of Failure to Intervene*

### FAILURE TO INTERVENE

The Fifth Circuit has held that an "officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983. An officer is liable for failure to intervene when that officer: 1) knew a fellow officer was violating an individual's constitutional rights, 2) was present at the scene of the constitutional violation, 3) had a reasonable opportunity to prevent the harm but, nevertheless, 4) chose not to act.[106]

---

[104] Exhibit B, p. 2, ¶ 8.
[105] Exhibit B, p. 2, ¶ 8.
[106] *Tilman v. Clarke Cnty.*, 2:20-CV-10-KS-MTP, 2021 WL 5936218, at *3 (S.D. Miss. Dec. 15, 2021) citing *Joseph v. Bartlett*, 981 F.3d 319, 343 (5th Cir. 2020).

Mere presence at the scene of the alleged use of excessive force, without more, also does not give rise to bystander liability.[107] The officer must have had a reasonable opportunity to realize the excessive nature of the force and a reasonable opportunity to intervene to stop it.[108] The primary focus is on whether the bystander officer has "a reasonable opportunity to realize the excessive nature of the force and to intervene to stop it."[109] "[T]hat determination involves consideration of both the duration of the alleged use of force and the location of the suspect relative to the allegedly bystanding officers."[110]

### Prong One

The first factor for a failure to intervene claim concerns whether Defendant Voorhies knew his fellow officer was violating an individual's constitutional right. Plaintiff alleges that Defendant Voorhies failed to intervene when Defendant Walker used chemical agent on him in his cell.[111] As analyzed above, Defendant Walker did not use any force, much less excessive force, on Plaintiff. Because there was no use of excessive force by another officer and because Defendant Walker was not present, there is no basis for Defendant Voorhies to believe that Defendant Walker's actions were unconstitutional. Since there was no use of excessive force, Defendant Voorhies could not have had knowledge that his fellow officer was violating Plaintiff's constitutional rights. As a result, if there was no use of force that was a violation of a constitutional right, then Defendant Voorhies had no reasonable means to intervene in said use of force.

### Prong Two

It is clearly established that in order to fail to intervene, an officer must have knowledge of a constitutional violation, which in this case is excessive force. As shown above, because there

---

[107] *Nowell v. Acadian Ambulance* Serv., 147 F. Supp.2d 495, 507 (W.D. La. 2001).
[108] *Id.*
[109] *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995).
[110] *Malone v. City of Fort Worth, Tex*., No. 4:09-CV-634-Y, 2014 WL 5781001, at *16 (N.D. Tex. Nov. 6, 2014).
[111] R. Doc. 1 & 4.

was no constitutional violation of excessive force that occurred by Defendant Walker, Defendant Voorhies did not violate clearly established law by failing to intervene. As such Defendant Voorhies did not act objectively unreasonable in light of clearly established law, so the claim for failure to intervene against him should be dismissed.

> #### iv.  Defendant Walker is Entitled to Qualified Immunity for the Claim of Failure to Intervene

> #### Prong One

The first factor for a failure to intervene claim concerns whether Defendant Walker knew his fellow officer was violating an individual's constitutional right. Plaintiff alleges that Defendant Walker failed to intervene when Defendant Voorhies allegedly caused damage to Plaintiff's hand/wrist while escorting Plaintiff to the shower.[112] As already stated above, Defendant Walker was not present on the tier during the incident that occurred.[113] Because Defendant Walker was not present, there would be no way for him to know if Defendant Voorhies had violated any of Plaintiff's constitutional rights, much less be able to intervene.

> #### Prong Two

It is clearly established that in order to fail to intervene, an officer must have knowledge of a constitutional violation, which in this case is excessive force. As already argued, Defendant Walker did not have any knowledge of if a constitutional violation occurred since he was not present on the tier during the incident. As such, Defendant Walker cannot be said to have acted objectively unreasonable in light of clearly established law since one cannot intervene in an alleged constitutional violation if that person is not present when the alleged violation occurred. As such,

---

[112] R. Doc. 1 & 4.
[113] Exhibit B, p. 1, ¶ 3.

Defendant Walker did not act objectively unreasonable in light of clearly established law, and Plaintiff's claim against him for failure to intervene should be dismissed.

### b. **Plaintiff's Claims for Injunctive Relief are Moot.**

In Plaintiff's complaint and amended complaint, he seeks injunctive relief that Defendant Voorhies and Walker stop abusing authority and that their employment be terminated. "A preliminary injunction is an extraordinary remedy that should only issue if the movant establishes: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest."[114] Defendants would like to note that Defendant Voorhies and Defendant Walker no longer work at Louisiana State Penitentiary.[115] Because neither Defendant still works at Louisiana State Penitentiary, the injunctive relief being sought by Plaintiff is no longer viable. As such, the claims for injunctive relief against Defendants Voorhies and Walker should be dismissed because they are now moot.

### IV.    CONCLUSION

As shown by the attached exhibits and referenced law, this Honorable Court should dismiss Plaintiff's claims against Defendants. Defendants Voorhies and Walker are entitled to qualified immunity. Plaintiff cannot put forth competent summary judgment evidence showing that Defendants Voorhies and Walker used excessive force against him or that Defendants Voorhies or Walker failed to intervene. As such, Defendants' Motion for Summary Judgment should be granted, and Plaintiff's claims against Defendants should be dismissed with prejudice and at Plaintiff's sole cost.

---

[114] *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009).
[115] Exhibit A, p. 1, ¶ 2 & Exhibit B, p. 1, ¶ 2.

Respectfully submitted,

**LIZ MURRILL**
**ATTORNEY GENERAL**

BY:    */s/ Brittany N. Calecas*
Brittany N. Calecas (No. 40302)
Assistant Attorney General
**Louisiana Department of Justice**
Litigation Division, Civil Rights Section
1885 North Third Street, Fourth Floor
Post Office Box 94005
Baton Rouge, Louisiana (70804-9005)
Telephone: 225-326-6300
Facsimile: 225-326-6495
E-mail: CalecasB@ag.louisiana.gov
*Attorney for Defendants*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 29, 2024, undersigned filed the above-entitled pleading electronically with the Clerk of Court by using the CM/ECF system and a copy of the foregoing was provided to pro se inmate plaintiff via U.S. First Class Mail, to the below name and address:

**<u>Pro Se Plaintiff</u>**
Alvin Williams (DOC #480922)
Louisiana State Penitentiary
Angola, LA 70712

*/s/Brittany N. Calecas*
Brittany N. Calecas
Assistant Attorney General